The Honorable Bruce H. Colton State Attorney Nineteenth Judicial Circuit 411 South Second Street Fort Pierce, Florida 34950
Dear Mr. Colton:
You ask substantially the following questions:
1. Does section 817.52(2), Florida Statutes, apply when an individual hires a taxicab and, upon reaching the destination, refuses to pay for the ride or states that he or she has no money and cannot, or will not, pay for the cab's service?
2. Does section 817.52(2), Florida Statutes, apply to an individual who drives a taxicab under an agreement with the owner that characterizes the driver as an independent business person purchasing the services of the cab's owner when the individual fails to remit the rate of payment at the end of a shift as provided in the agreement?
In sum:
1. Section 817.52(2), Florida Statutes, applies to any individual who hires a taxicab and, after receiving the service, does not pay or offer to pay for the hiring of the cab.
2. While the failure of a driver to remit payments as provided in an agreement with the owner of a taxicab would appear to be in the nature of a private contractual matter, whether to prosecute the individual pursuant to section 817.52(2), Florida Statutes, is within the discretion of the state attorney.
Question One
Section 817.52(2), Florida Statutes, provides:
HIRING WITH INTENT TO DEFRAUD. — Whoever, with intent to defraud the owner or any person lawfully possessing any motor vehicle of the rental thereof, hires a vehicle from such owner or such owner's agents or any person in lawful possession thereof shall, upon conviction, be deemed guilty of a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084. The absconding without paying or offering to pay such hire shall be prima facie evidence of such fraudulent intent.
The plain language of the statute extends to those individuals who hire a vehicle from its owner, the owner's agents, or any person in lawful possession of the vehicle, with the intent to defraud the owner or person lawfully possessing the vehicle.
While not defined by the statute, "[i]ntent to defraud" has been determined to mean an "intention to deceive another person, and to induce such other person, in reliance upon such deception, to assume, create, transfer, alter or terminate a right, obligation or power with reference to property."[1] As prescribed by the statute, however, absconding without paying or offering to pay for the hire establishes the fact that the individual had the requisite fraudulent intent.
Thus, when an individual engages the service of a taxi and fails to pay or offer to pay for the service after it has been provided, he or she could be charged with obtaining the vehicle with intent to defraud the owner or person lawfully in possession of the taxi pursuant to section 817.52(2), Florida Statutes. I would note, however, that in an instance where an individual may not have the money, but offers, to pay the cab fare, the requisite failure to offer to pay that would allow the prosecutor prima facie proof of the individual's intent to defraud may not be present. Ultimately, it is within the discretion of the state attorney whether to prosecute an individual under section 817.52, Florida Statutes.[2]
Question Two
You have provided this office with a copy of an agreement that is used by the owners of taxicabs to engage individuals to drive their cabs on a per-shift basis, renewable on a daily basis by mutual agreement of the parties. Under the agreement, the driver is characterized as an independent business person who purchases the services of the owner. These services include: answering telephone requests for cab service and relaying such requests to the driver; providing road and/or wrecker service; supplying properly equipped and marked taxicabs; and furnishing oil, antifreeze, tires and maintenance prescribed by the owner. In addition, the cab's owner agrees to maintain and pay for all licenses, taxes, and fees on the taxicab.
The agreement provides that the relationship between the owner and the driver is one of seller and buyer, with the driver acting as an independent business person purchasing the services of the owner in order to perform taxicab services. The parties to the agreement acknowledge that they are not employer/employee, principal/agent, or master/servant. Pursuant to the agreement, the driver must pay the owner "the applicable price provided for in the posted rate schedule."[3] There is no indication in the agreement or your correspondence, however, how the rate is calculated — whether per mile, per day, per passenger, or based upon a percentage of the fare collected. Furthermore, given that the owner of the cab appears to hold the taxi service license and sells the use of that service to the driver, it is unclear whether the agreement would be solely for the hiring of the vehicle.
The determination of whether a driver who fails to remit the rate of payment at the end of a shift may be charged with obtaining a vehicle with intent to defraud under section 817.52(2), Florida Statutes, is a mixed question of law and fact that may not be answered by this office. Such a determination would depend upon the specific facts and conclusions drawn regarding the effect of the agreement between the owner and the driver. If it is found that the driver is only renting the car from the owner, then the failure to remit payment for such rental would allow prosecution under section 817.52(2), Florida Statutes. If, however, the agreement is determined to be a sale by the owner to the driver of taxicab services, that incidentally includes the use of the car, prosecution pursuant to section 817.52(2), Florida Statutes would be within the discretion of the state attorney.
Accordingly, it is my opinion that any individual who hires a taxicab and who, after receiving the service, does not pay or offer to pay for the hiring of the taxicab would be subject to criminal charges under section 817.52(2), Florida Statutes. Whether section 817.52(2), Florida Statutes, would apply to a driver who fails to remit payments as provided in an agreement with the owner of a cab service would depend upon the facts of the particular situation and prosecution thereof would be within the discretion of the state attorney.
Sincerely,
Robert A. Butterworth Attorney General
RAB/tls
[1] Black's Law Dictionary 381 (5th ed. 1979).
[2] Cf., State v. Harris, 334 So.2d 674, 675 (Fla. 2d DCA 1976) (course of criminal conduct may violate laws that overlap yet vary in penalties; legislature has left to the prosecutor's discretion which violations to prosecute and hence which range of penalties to visit upon the offender).
[3] Taxicab System Service Agreement, St. Lucie Yellow Cab, Inc., section 5, p. 3.